FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

99 APR 27 AM 9:19

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JEFF WARDEN, et al., ] | |
| ] | |
| Plaintiffs, ] | |
| ] | |
| vs. ] | CV 97-N-2742-NE |
| ] | |
| CITY OF HUNTSVILLE, et al., ] | |
| ] | |
| Defendants. ] | |

ENTERED

APR 27 1999

| | |
|---|---|
| TOBY CLARK, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | CV 98-N-1485-NE |
| ] | |
| CITY OF HUNTSVILLE, et al., ] | |
| ] | |
| Defendants. ] | |

### Memorandum of Opinion

The court has for consideration plaintiffs' motion to quash certain subpoenas, filed March 9, 1999, or in the alternative for a protective order. The plaintiffs object to defendants' attempts to discover information from mental health professionals who have been or now are treating the plaintiffs. The parties agree that federal law controls this question and that the information sought is protected from disclosure by the psychotherapist-patient privilege recognized in *Jaffee v. Redmond*, 518 U.S. 1 (1996). The



only question presented, therefore, is whether the plaintiffs have waived that privilege by seeking damages for mental anguish.

The court agrees with the plaintiffs that their damage claims are not alone enough to constitute a waiver. The court recognizes that a majority of district courts faced with the question have reached the contrary conclusion. These courts have reasoned that a plaintiff who seeks mental distress damages thereby puts his or her past and present mental status squarely in issue, and so waives the therapy privilege by making communications with mental health professionals critically relevant to the case. *See, e.g., EEOC v. Danka Industries*, 990 F. Supp. 1138 (E.D. Mo. 1997); *Vann v. Lone Star Steakhouse and Saloon*, 967 F. Supp. 346 (C.D. Ill. 1997); *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127 (E.D. Pa. 1997); *see also Kirchner v. Mitsui & Co., Inc.*, 184 F.R.D. 124 (M.D. Tenn. 1998) (applying a similar analysis under Tennessee law). While this argument is somewhat persuasive, the court must nonetheless respectfully disagree with the conclusions reached in these cases.

The court concludes instead that the minority view, particularly as expressed in *Hucko v. City of Oak Forest*, 1999 WL 160311 (N.D. Ill. 1999), achieves a result more in keeping with the principles set down by the Supreme Court in *Jaffee*. Two key landmarks in the Supreme Court's opinion guide the court to this conclusion. First, *Jaffee* made it quite clear that the important interests served by the therapy privilege could not be protected if the privilege were called into doubt any time it covered highly relevant evidence. The Court therefore

> reject[ed a] balancing component of the privilege .... Making the promise of confidentiality contingent upon a trial judge's later evaluation of the

> patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.

*Jaffee*, 518 U.S. at 17. Second, the Court justified the creation of the privilege in part by analogy to more well-established privileges, and in particular to the spousal and attorney-client privileges. *Id.* at 10-12. The court therefore concludes, as have most other courts facing questions about the new privilege, that the "case-by-case" development of the privilege envisioned by the Supreme Court should be guided "in a like manner," *id.* at 18, by analogy to the rules governing other privileges. *See, e.g., Hucko*, 1999 WL 160311 at *3; *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229 (D. Mass. 1997); *Danka*, 990 F. Supp. at 1142; *Sarko*, 170 F.R.D. at 130.

Based on these principles, the court concludes that a party does not waive the privilege merely by putting his or her mental state in issue. It is true that by doing so the party makes evidence involving his or her mental health treatment peculiarly relevant to the case. However, the court does not agree with the defendant that an evidentiary privilege is waived any time an issue on which that evidence is relevant is injected into the case. This is clearly not the rule with respect to the attorney-client privilege. Attorneys often possess highly relevant evidence on a wide range of issues, including notice, intent, and other related matters. But relevant, even highly relevant, evidence on an issue may still be excluded based on the privilege. Clients therefore do not waive the privilege by raising one of those issues in litigation. Instead, waiver occurs only when the contents of the attorney-client communications themselves are placed at issue, as in cases involving an advice of counsel defense or legal malpractice. In such cases, the party asserting the

3

claim or defense must rely, at least implicitly and indirectly, on what is in those communications to make out a claim. It is by relying on the evidence, not by making it relevant, that the party waives his or her privilege.

In the court's view, *Jaffee* calls for a similar level of protection for psychotherapist-patient communications. Therefore the court concludes that the privilege protecting these communications is waived only if the party asserting the privilege somehow refers to or relies upon the *contents* of those communications to make out a case. *See Hucko*, 1999 WL 160311 at *7; *Vanderbilt*, 174 F.R.D. at 230. Plaintiffs have not done so, at least so far. They are thus entitled to assert the privilege and obtain at least some protection from disclosure and use of the privileged information.

However, in establishing the level of that protection, the court must underscore the very limited scope of its ruling today. In the court's view, the evidence at issue is privileged *only* if the plaintiffs do not put the existence or course of their therapy at issue at trial. As a practical matter, the court recognizes that a bare mention of on-going therapy by the plaintiffs at trial may lead the jury to infer that mental health professionals have concluded that the plaintiffs have been damaged and need treatment. Without evidence to contradict this inference, the defendant may well be prejudiced. The court will not permit this situation to arise. Therefore the court gives warning that it will likely deem the slightest hint, however oblique, by the plaintiffs about the course or even the existence of their therapy sessions an open invitation to the defendant to submit evidence regarding the

4

same.[1] Nor is the court inclined to allow the plaintiffs to submit evidence from some therapists and not others. *See Hucko*, 1999 WL 160311 at *2 & n.3. At least as to each individual plaintiff, the court views psychotherapist testimony as an all or none proposition.

Because the court suspects that plaintiffs may well decide to rely on such testimony at trial, the court also wants to ensure that the defendants are prepared for whatever may come up. Therefore the court believes that, under proper safeguards, the defendants should be allowed to conduct discovery despite the therapist privilege. The court will therefore deny plaintiffs' motion to quash subpoenas and allow discovery. However, the court will also enter a protective order limiting the use of any information thereby obtained and forbidding the defendants to introduce such information at trial unless and until plaintiffs first open the door for such evidence.

The court will enter a separate order in conformity with this memorandum of opinion.

Done, this 26th of April, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[1] The court notes that the existence and timing of communications is not privileged. *See Vanderbilt*, 174 F.R.D. at 230. The defendants may therefore properly inquire into these matters. Of course defendants' inquiries and plaintiffs' responses, assuming they are limited to the same narrow scope, will not operate to open the door to a broader inquiry by the defendants.